*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

Nos. 25-CM-0265 & 25-CM-0266

GLENDA MOREHEAD, APPELLANT,

V.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(2023-CMD-007083 & 2024-CMD-008632)

(Rhonda Reid Winston, *Judge*)

(Submitted March 17, 2026                     Decided August 13, 2026)

*Russell A. Bikoff* was on the brief for appellant.

*David B. Goodhand*, Assistant United States Attorney, with whom *Jeanine Ferris Pirro*, United States Attorney, and *Chrisellen R. Kolb* and *Nicholas P. Coleman*, Assistant United States Attorneys, were on the brief for appellee.

Before EASTERLY, DEAHL, and SHANKER, *Associate Judges*.

DEAHL, *Associate Judge*: Glenda Morehead was convicted of two counts of simple assault, among other charges, after pepper spraying Richelle Adams and Adams's eight-year-old daughter, A.A., in the lobby of their shared apartment building. Morehead argued before the trial court that she should be acquitted of the

assault charge against A.A. because the evidence did not establish that A.A. was an intended target of the attack. Instead, the evidence suggested that A.A. was struck only incidentally as Morehead sprayed Adams, which Morehead contends means that she did not have the requisite mens rea for an assault on A.A. The trial court disagreed, reasoning that regardless of whether Morehead intended to strike A.A., Morehead's intent to strike Adams could be "transferred" to supply the requisite mens rea for an assault on A.A. even if she were an unintended target.

Morehead now appeals her conviction for assaulting A.A. She argues that the evidence was insufficient to prove that she had the requisite mens rea to sustain that assault charge. Because we agree with the trial court's application of the transferred intent doctrine, we affirm.

## I. Background

Morehead and Adams were neighbors who lived in a shared apartment building and had an acrimonious relationship, to put it lightly. In one incident that preceded the incident central to this appeal, Adams and A.A. were at their apartment unit's door when Morehead approached to within five feet of Adams, raised a hammer above her head as if to strike, and said, "Bitch, I'll kill you in front of your daughter." Morehead was convicted of several counts related to that incident.

Morehead does not challenge those convictions on appeal, so that is merely some background for the incident at hand.

The second and more pertinent incident occurred about ten months later, when Adams and her daughter were in the lobby waiting to take the elevator up to their unit. When the elevator arrived, A.A. stepped into it just as Morehead entered the lobby and sought to likewise board the elevator. Mindful of their prior encounter, Adams told Morehead, "you can't be on the elevator with us," and Morehead responded that she did not "have time for this" and entered the elevator with A.A. Adams's principal goal then became to get her daughter off of the elevator, but Morehead was obstructing her. After repeatedly asking Morehead to move, Adams pushed her out of the way so she could physically extract her daughter. Morehead then took the elevator by herself, while Adams and A.A. waited for it to return to the lobby.

When the elevator returned about a minute later, Morehead was lying in wait inside, and right as the elevator doors opened Morehead began spraying Adams with pepper spray directly in her face. Adams turned to run outside and Morehead followed, still spraying. A.A. was sitting on a bench inside the lobby, and Morehead struck her in the face with pepper spray as well while chasing Adams. Adams described how, in the aftermath of that attack, her "skin was burning," her "face was

burning, and "it burned . . . all over [her] body." Adams also testified that A.A. was "screaming in excruciating pain from the spray being in her face," and Adams had to rush A.A. to the shower to flush the pepper spray from her eyes.

In its findings convicting Morehead of assaults on both Adams and A.A., the trial court credited Adams's testimony in full. The court further ruled that the government proved all of the elements of an "attempted battery" simple assault against Adams, reasoning that Morehead "intended to use . . . force or violence" against Adams, that she had the apparent ability to injure Adams when she did so, and that she did in fact injure Adams. The court likewise ruled that the government proved an assault against A.A., "basically, in the same manner." The court did not find that Morehead intended to pepper spray A.A., which defense counsel had argued was a prerequisite for finding Morehead guilty of that assault. It instead reasoned that the government did not need to prove that Morehead intended to spray A.A. specifically, because Morehead intended to spray Adams, and that intent could be "transferred" to supply the requisite mens rea for the assault on A.A.

Morehead now appeals, challenging only her conviction for assaulting A.A.

## II. Analysis

On appeal, Morehead argues that there was insufficient evidence to convict her of assaulting A.A. because the evidence did not establish, and the trial court did not find, that she intended to strike A.A. with pepper spray. The government counters that Morehead was at least reckless as to the possibility that A.A. would be hit, and the parties have a spirited debate in their briefs about whether recklessness satisfies the mens rea element for an attempted battery assault after this court's opinion in *Perez Hernandez v. United States*, 286 A.3d 990, 996 (D.C. 2022) (en banc). Putting that debate aside, the government defends the trial court's ruling that the transferred intent doctrine applies here in any event, even if Morehead lacked the requisite mens rea to assault A.A. specifically. Because we agree with the trial court and the government that the transferred intent doctrine applies here, we do not resolve the admittedly unsettled debate about whether recklessness satisfies the mens rea element of an attempted battery assault. *See G.W. v. United States*, 323 A.3d 425, 437 (D.C. 2024) (observing that *Perez Hernandez* "left undefined . . . what conduct falls under the broader umbrella of attempted or completed battery assault—for which we have yet to assign a specific mens rea using modern terminology").

The transferred intent doctrine was part of the common law that this court inherited from Maryland over a century ago. *See Perez Hernandez*, 286 A.3d at 996

(explaining that, in 1901, Congress decreed that "[t]he common law of the District of Columbia encompasses all common law in force in Maryland in 1801"); *O'Connor v. United States*, 399 A.2d 21, 24-25 (D.C. 1979) (recognizing the transferred intent doctrine as part of our common law). In its classic form, the doctrine provides that, when a defendant intends to strike one person but by mistake strikes another, the intent to injure follows the act: it is transferred from the intended victim to the actual one, and the defendant is punished for the same crime as if she had struck her intended target. *See O'Connor*, 399 A.2d at 24-25; *Gordon v. United States*, 285 A.3d 199, 211 (D.C. 2022). The doctrine's philosophical underpinning is that a defendant should not benefit from their own "bad aim"—if they sought to strike one person, and accidentally hit somebody else, it should make no difference that those two people are not one and the same. *Gordon*, 285 A.3d at 210 (citing *Gladden v. State*, 330 A.2d 176, 188 (Md. 1974)).

While the doctrine stems from common law murder, where a defendant intends to kill one person but kills another, *id.* at 207, we have extended it beyond homicide cases to non-lethal assaults. There is admittedly not a wealth of case law in our jurisdiction that expressly approves of applying the transferred intent doctrine to non-homicide cases. We have tended to confront the challenges to doing so in a "plain error" posture, and while we have consistently rejected those challenges, our holdings have typically been limited to it not being "plain or obvious" that

transferred intent does not apply. *See id.* at 207-08 (describing how "many transferred intent cases have arisen on a plain error posture" and discussing those cases). But on several occasions, we have more expressly approved of extending the transferred intent doctrine beyond homicide cases, and there is no authority to the contrary in this jurisdiction. *See, e.g.*, *In re E.D.P.*, 573 A.2d 1307, 1308 (D.C. 1990) (upholding three assault convictions as to three "juvenile supervisors" struck in assault on intended victim); *Hagans v. United States*, 96 A.3d 1, 43 (D.C. 2014) ("[T]he doctrine of transferred intent . . . allowed appellants to be held liable for the . . . wounding of [an incidental victim] even though the appellants intended to kill" nearby rivals instead); *(Wesley) Williams v. United States*, 881 A.2d 557, 567 (D.C. 2005) (upholding assault with a deadly weapon conviction on a transferred intent theory).

In *In re E.D.P.*, for instance, a detained juvenile began fighting with another detainee and hit and kicked three supervisors who intervened. 573 A.2d at 1308. We held that his intent to injure his intended target transferred to each supervisor he actually hit, and we sustained the resulting assault-based adjudications as to all three. *Id.* at 1308-09; *see also Dickens v. United States*, 19 A.3d 321, 325-26 (D.C. 2011) (describing *E.D.P.* as "essentially an assault case" resting on a transferred intent theory). Whatever *E.D.P.*'s analytical shortcomings might be—it was admittedly rather curt in its analysis—it seems to squarely hold that the transferred intent

doctrine applies beyond homicide offenses. And if there is any doubt about that,[1] in our view, the doctrine's logic of pairing an intent to injure one person with an injury actually inflicted upon another applies to assaults and batteries no less than to killings.

Just as importantly, and contrary to what Morehead appears to argue at times, the transferred intent doctrine extends even to cases where the intended target is injured or killed. We made that clear in *Lloyd v. United States*, where we upheld both of a defendant's first-degree murder convictions: one for the intended target who was struck and killed, and the other—under a transferred intent theory—for an unintended victim who was likewise struck and killed. 806 A.2d 1243, 1250-51 (D.C. 2002). In *Lloyd*, we rejected the notion that a defendant's intent is effectively "exhausted" if she has successfully assaulted or murdered the intended victim. We explained, quoting approvingly from an out-of-jurisdiction case, that "[t]he intent transferred . . . 'is not [properly] regarded as a limited commodity that, once satisfied, is totally expended.'" *Id.* at 1250 (quoting *State v. Hinton*, 630 A.2d 593, 598 (Conn. 1993)).

---

[1] Morehead does not herself cast any doubt upon that, as her brief describes *E.D.P.* as "uphold[ing the] use of transferred intent in felony assault" cases.

There is one notable limitation on the transferred intent doctrine, alluded to above, but it is of no help to Morehead here. The limitation is that the transferred intent doctrine does not apply where the unintended victim is not in fact injured. *Gordon*, 285 A.3d at 212; *but cf. id.* at 212 n.10 (noting the potential application of the "concurrent intent" doctrine as to an "unintended, uninjured victim," provided the "unintended victim [was] foreseeably at risk"). That was a contentious point that this court only recently resolved in a divided opinion in *Gordon*, and the lively debate in *Gordon* stemmed partly from the fact that assaults do not require any injury at all—one can commit an assault by merely putting someone in reasonable fear of injury. And given that assault does not require an injury at all, there was a decent argument that transferred intent applies even as to an unstruck target who was put in mere reasonable fear of being injured. But we rejected that view in *Gordon* and instead held "that extending transferred intent to situations where an unintended victim is not physically injured departs too far from the origins of the doctrine." *Id.* at 211; *but see id.* at 224-29 (McLeese, J., concurring in part and dissenting in part).

That brings us back to the present case, and whether the trial court properly applied the above principles in convicting Morehead of simple assault against A.A. We conclude that it did properly apply those principles, given the following three considerations: First, Morehead indisputably intended to assault Adams when she sprayed her with pepper spray. Second, that intent could be transferred to an

unintended victim like A.A., even as to a mere assault and even though the intended target was likewise injured, so long as that unintended victim was actually injured. Third, that condition was satisfied here, where A.A. was actually struck and injured. While Morehead does not seem to dispute the sufficiency of the evidence that A.A. was injured, we independently conclude that the evidence was more than sufficient on that score, given Adams's testimony that A.A. was screaming in "excruciating pain" from the chemical agent in her face and eyes.

Morehead counters that, in her view, some other courts disagree with us about the applicability of transferred intent when the intended target is injured or killed. She highlights *Ford v. State*, 625 A.2d 984, 998 (Md. 1993), and *People v. Birreuta*, 208 Cal. Rptr. 635, 639 (Ct. App. 1984), as cases that held the transferred intent doctrine does not apply where the intended target is injured or killed. Notably, to the extent those cases actually held that transferred intent does not apply where the intended target is injured or killed—as opposed to merely saying that in dicta—they have been overruled. *See Henry v. State*, 19 A.3d 944, 951-52 (Md. 2011) ("[T]ransferred intent is applicable to the killing of an unintended victim even if the intended victim was also killed, and we disapprove of the dictum to the contrary in *Ford*."); *People v. Bland*, 48 P.3d 1107, 1115 (Cal. 2002) (concluding that *Birreuta* "was incorrect," and holding that "[i]ntent to kill transfers to an unintended homicide victim even if the intended target is killed"). And in any event, the holdings that

Morehead attributes to *Ford* and *Birrueta* run directly contrary to our own controlling precedents. *Lloyd*, 806 A.2d at 1250-51; *Hunt v. United States*, 729 A.2d 322, 326 (D.C. 1999) (rejecting *Ford*'s "dicta" and reasoning that the transferred intent doctrine "operates with full force whenever the unintended victim is hit" (quoting *Harvey v. State*, 681 A.2d 628, 637 (Md. 1996))). We are of course obliged to follow our own precedents notwithstanding any contrary authority from other jurisdictions.

Morehead's final counter is underdeveloped and harder to decipher: While at times in her brief she suggests that transferred intent does not apply where the intended victim is struck or killed, she later seems to recognize that our precedents have rejected that limitation and any out-of-jurisdiction cases endorsing it (she is correct about that, as we have just explained). So she pivots to an argument, for which she cites no support and offers little reasoning, that "the doctrine should not be used to supply a mens rea of general intent for simple assault where there is scant evidence that satisfies that element." This argument starts from the dubious premise that attempted battery assaults are properly described as "general intent" crimes in the District, despite our recent and repeated explications in en banc opinions that the language of general intent is an outmoded, imprecise, and confusing way to discuss mens rea: "Ideally, instead of describing a crime as a 'general intent' or 'specific intent' crime, courts and legislatures would simply make clear what mental state (for

example, strict liability, negligence, recklessness, knowledge, or purpose) is required for whatever material element is at issue." *Carrell v. United States*, 165 A.3d 314, 324 n.26 (D.C. 2017) (en banc) (quoting *Jones v. United States*, 124 A.3d 127, 130 n.3 (D.C. 2015)); *Perez Hernandez*, 286 A.3d at 1000 (describing how "the historical categories of general intent crimes and specific intent crimes have been subject to much criticism" and making a "[l]inguistic [t]ransition" away from those categories). In light of those explications, it is no longer correct to say that any species of assault is a general intent crime in this jurisdiction. *Cf. G.W.*, 323 A.3d at 437 (noting that we have not assigned a specific mens rea "using modern terminology" to attempted battery assaults).

But even if we were to accept the premise that it remains accurate to describe assault as a general intent crime in the District, it would make little sense to say that the transferred intent doctrine therefore does not apply to it. The whole office of the transferred intent doctrine is to supply the mens rea for an offense against the unintended victim without independent proof that the defendant harbored any culpable mental state toward that victim—the requisite intent is instead borrowed from the intended victim. And there is no good reason why a specific intent to injure or kill a particular victim could be transferred, as we have clearly held in cases like *Lloyd*, 806 A.2d at 1246, 1251 (applying doctrine to transfer "specific intent" to murder), but a more general intent to make a contact with no specific injury intended

could not.[2] Indeed, our cases have already crossed this bridge and applied the transferred intent doctrine to so-called general intent crimes. *See In re E.D.P.*, 573 A.2d at 1308 (applying transferred intent doctrine to assaults on "juvenile supervisors"); *see also Carter v. United States*, 531 A.2d 956, 960 (D.C. 1987) (agreeing with trial court that "assault on a police officer [is] a general intent crime"). So even if attempted battery assaults were general intent crimes, contrary to our view, the transferred intent doctrine remains applicable here.

### III. Conclusion

Because the trial court properly applied the transferred intent doctrine when concluding that Morehead assaulted A.A., we affirm Morehead's convictions.

---

[2] It would be unnecessary to apply the transferred intent doctrine to general intent crimes if one mistakenly understood general intent in its broadest possible sense to mean only "the intent to do the act that constituted the assault," *see Perez Hernandez*, 286 A.3d at 1000, irrespective of whether there was any intent to contact or injure anybody. But even when we spoke of assault as a general intent crime, we rejected that overly broad understanding of what general intent means. *(Antwan) Williams v. United States*, 887 A.2d 1000, 1003 (D.C. 2005) (explaining that even under a "general intent" rubric, the defendant must have "intend[ed] . . . to strike" someone, even if he had no particular intent to injure them); *see also Perez Hernandez*, 286 A.3d at 1001 (making clear, without endorsing the general intent label, that to constitute an assault, the contact "cannot be inadvertent"). And if we adopted that mistaken and overly broad view of what general intent means, that would not help Morehead: she would be correct that the transferred intent doctrine does not apply, but only because her general intent to shoot her pepper spray would satisfy the mens rea element of an assault against both Adams and A.A.

*So ordered.*